(No. 2143— )

C. D. Wood, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed March 13, 1935.*

Arthur Roe, for claimant.

Otto Kerner,. Attorney General; John Kasserman, Assistant Attorney General, for respondent.

Mr. Justice Linscott delivered the opinion of the court:

The claimant, C. D. Wood, filed his claim in this court on the 5th day of April, 1933, and alleges that he is a resident of Fayette County, Illinois, and that sometime prior to the year 1930 he was employed as a special laborer in assisting or superintending the putting in of drainage tile at the Illinois State Farm at Vandalia, and that on or about August 1, 1930, while he was so working as a special laborer in and about putting in drainage tile and working along the tile ditch one Kenneth Peterson, an inmate of the Vandalia institution, was working in the ditch and assisting in placing tile therein, and while the claimant was walking along the edge of the ditch he stooped over looking down to inspect the work and some of the dirt that had been thrown out of the ditch rolled back on Peterson and Peterson became suddenly frightened and threw a shovel which he had in his hands over his shoulder and struck the claimant in the eye with the shovel, which caused the eye to become inflamed and very sore.

The claimant reported the accident to C. J. Metzger, who. at the time was superintendent of the State farm, and within a few days thereafter Dr. Mark Greer, who was the physician and surgeon for the State farm, treated his eye, but the eye became worse and that on or about the first day of January, 1931, he completely lost the use of that eye and has no vision in said eye. The petitioner alleges further that he reported this accident to Metzger, the then superintendent of the farm, and asked him in regard to filing claim or being paid for the loss of said eye; that the said Metzger told him that if he filed

a claim or made any application for compensation or damages he would lose his job. It is also averred that later on the said Metzger, so the claimant is informed and believes, did take up the matter with the Superintendent of Prisons and kept promising claimant that he would see about it, and the said Metzger failed and neglected to do so, and this it is averred is the reason why there is a delay in filing the petition, and damages in the sum of Three Thousand Dollars ($3,000.00) is claimed.

An amendment of the declaration was filed on November 2, 1933, and alleges that the cause of the accident was that Peterson, the man in the ditch, "threw his hands over his head and struck your petitioner in the eye with his thumb nail," and also amends the declaration so as to read that the vision of the eye was completely lost in January, 1932.

The evidence shows that the claimant was an employee of the State on June 9, 1930, to February 16, 1931; that he went back to work on September 29, 1931, and worked until the last day of February, 1933. Claimant was not quite sure what date he received the injury but thinks that it was about the first day of August, 1930; that at that time they were laying an eighteen inch tile in a nine foot ditch; that the ditch had been caving in and as the claimant was walking along the ditch he came up by some men and dropped down on his knee on the dirt that was thrown out and looked down and as he dropped down he knocked a clod down and it fell and hit this man along on the hip and when it did he jumped and threw up his arms and hit the claimant in the left eye with his thumb nail on his left hand. Claimant testified that he went to the emergency hospital and an inmate there in charge put some medicine in his eye, and he "made inquiry for an accident blank" which the institution did not have. The eye caused considerable pain and the next morning he went to the doctor of the institution and he put some medicine in the eye and treated it a couple or three times.

Claimant further testified that when he found that the "eye was out" he went to Metzger and told him to do something for him and was sent to Dr. Greer and Dr. Greer recommended that he be sent to a specialist. Nothing was done and the claimant went back to Dr. Greer. He states that he went back to the office a little later and saw a letter lying on Dr. Greer's desk concerning his eye from the Board of Claims,

which read: "We will settle any reasonable amount of claim for the eye." Claimant also testified that Dr. Greer did not say anything to him about the letter; that claimant went to the doctor and kept dragging it along, and in the course of six months he saw Dr. Greer four times, and finally he told Mr. Metzger that if nothing was done for him, he would file a claim, and Metzger said: "If you file a claim you have got to quit your job." That was in December, 1932.

Claimant also testified that he saw a letter apparently from Colonel Whipp, telling Mr. Metzger "to do something for that man" concerning claimant's eye. That was sometime in December, 1932. Claimant also testified that a few days after that he was sent to Dr. Greer by Metzger.

Claimant testified that he was being paid $125.00 per month and maintenance, which included board, room and washing. On cross examination he testified that he was a married man and had a wife and one child; that they had been separated about three years; that while he was employed by the State, he was giving his wife and child $40.00 per month.

Dr. Greer recommended that the claimant be sent to an eye specialist for treatment and the doctor confirmed the testimony of the claimant that the claimant had lost the vision of the left eye.

Under the Workmen's Compensation Act it is provided that the provisions of this Act shall apply automatically and without election to the State * * * and to all employers and all of their employees engaged in any department of the following enterprises or businesses which are declared to be extra-hazardous. (Then follows a list of the various enterprises or businesses which are declared by law to be extra-hazardous.) Sub-paragraph 8 of this section provides: * * * Provided, nothing contained herein shall be construed to apply to any work, employment or operations done, had or conducted by farmers and others engaged in farming, tilling of the soil, or stock raising, or to those who rent, demise or lease land for any such purposes, or to any one in their employ or to any work done on a farm or country place, no matter what kind of work or service is being done or rendered."

Item 6 of Section 6 of the Court of Claims Act authorizes the Court of Claims to hear and determine the liability of the State for accidental injuries or death suffered in the course of employment by any employee of the State, such determination

to be made in accordance with the rules prescribed in the Act commonly called the "Workmen's Compensation Act."

The Supreme Court of this State in the case of *Noverio* vs. *Industrial Commission,* 348 Illinois, 137, held:

An employer whose business consists of laying tile on farms is not liable for an injury received by one of his employees as the Compensation Act expressly exempts· by its provisions any work done on a farm or country place. No work could be more fundamentally a part of farming than drainage to put the soil in shape for cultivation. That it was being done by one not engaged in general farming himself is immaterial.

With this view of the law, it will be unnecessary to discuss the facts of this case with regard to Section 24 of the Compensation Act, even though we may be perplexed as to how a man standing in a ditch nine feet deep could strike another man on his knees on the top of the ditch with his thumb nail.

We must decide these cases in accordance with the provisions of the Workmen's Compensation Act. The claimant clearly comes within the provisions of that part of the Act exempting farm labor. The claim for compensation must, therefore, be denied. Case dismissed.